IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ROY A. CALL,

      Plaintiff,                         Case No.: 3:13-cv-133

 vs.

CITY OF RIVERSIDE, *et al.*,               Judge Thomas M. Rose
                                        Magistrate Judge Michael J. Newman

      Defendants.

## ORDER GRANTING DEFENDANTS' ORAL MOTION TO REQUIRE PLAINTIFF'S EXPERT WITNESS TO PREPARE A WRITTEN REPORT PURSUANT TO FED. R. CIV. P. 26(a)(2)(B)

This matter is before the Court for a determination of whether Plaintiff's expert witness,

Harry Thomas, needs to submit an expert witness report in conformance with Fed. R. Civ. P.

26(a)(2)(B) or is exempted from the report disclosure requirement under Fed. R. Civ. P.

26(a)(2)(C).[1] The issue was addressed in a discovery conference call with counsel for both sides,

held pursuant to S.D. Ohio Civ. R. 37.1, during which counsel presented oral argument on their

---

[1] Fed. R. Civ. P. 26(a)(2)(B) provides:
Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(C) provides:
Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
(ii) a summary of the facts and opinions to which the witness is expected to testify.

respective positions and agreed to submit the matter for decision by the Court.  Thereafter, briefs and attached exhibits were filed by Plaintiff and Defendants pursuant to Court Order.  Docs. 20-22.

## I.

This is a 42 U.S.C. § 1983 case that, as alleged in the complaint, involved events occurring in the early morning hours of August 28, 2012.  Doc. 1 at PageID 3.  Plaintiff entered a gas station while openly carrying a firearm.  *Id.*  Police were dispatched to the scene, and questioned and detained Plaintiff for some amount of time before ultimately releasing him and issuing him a citation.  *Id.* at PageID 3-6.  Pursuant to the Calendar Order and Rule 26(a)(2)(A), on February 10, 2014, Plaintiff disclosed his expert witness as Harry Thomas, a retired Lieutenant formerly with the Cincinnati Police Department.  Doc. 22-1 at PageID 210.  It is undisputed that Plaintiff provided a summary disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(C) consisting of the subject matter on which Thomas is expected to present evidence and a summary of the facts and opinions to which he will testify.[2]  *Id.*  Defendants objected and argued that Thomas is required to provide an expert witness report in accordance with Fed. R. Civ. P.

---

[2] The disclosure states in full:

> Lieutenant Harry Thomas is retired from the Cincinnati Police Division. He was responsible as a shift commander and for training of proper police procedures to the police officers under him.
>
> Summary of facts – Lieutenant Thomas will [] testify regarding police procedure based on the facts contained in the documents provided in discovery, *i.e.*[,] Ohio Uniform Incident Report made by Sgt. Jones dated 8/28/2012; Ohio Uniform Incident Report made by Officer Jackson dated 9/1/2012; Call Details Report from the Huber Heights Regional Communications Center dated 8/28/2012; the complaint against Roy Call; Statement of Linda Johnson dated 9/6/2012; and Ohio Uniform Incident Report made by Sgt. Jones dated 9/6/2012.
>
> Summary of opinion – Lieutenant Thomas' opinion testimony will be that the procedures followed by the police officers were not consistent with *Terry* stops under the Supreme Court case of *Terry v. Ohio* and were in violation of professional standards of police procedures. The opinion will cover the procedures for conducting a *Terry* stop, the procedures for making an arrest, the procedures for determining if, and when, a vehicle may be searched.

Doc. 22-1 at PageID 210.

26(a)(2)(B).  The narrow issue presented is whether Thomas is "retained or specially employed to provide expert testimony in the case" and therefore required to provide a written report under Rule 26(a)(2)(B).

Plaintiff's counsel advises the Court that Thomas's involvement in this case began after the commencement of litigation.  Thomas was not present during any of the events precipitating this litigation.  Nor does he have personal knowledge of any facts underlying the case that would allow him to testify as a fact witness.  Thomas, therefore, will provide only expert testimony under Fed. R. Evid. 702, 703, or 705 based upon a review of documents obtained through discovery and provided to him by Plaintiff's counsel.  *See* doc. 22-1 at PageID 210.  Thomas will not receive compensation from Plaintiff for his involvement in the case.  *See* doc. 21 at PageID 198.

## II.

### A.  Rule 26(a)(2) and 2010 Amendments

Rule 26(a)(2)(A) requires a party to disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," *i.e.*, an expert witness.  The party must also disclose certain other information depending on whether the expert witness meets the parameters of Fed. R. Civ. P. 26(a)(2)(B).  The disclosure must be accompanied by a written report "if the witness is one retained or specially employed to provide expert witness testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B).  A "considerably less extensive" summary disclosure is required "if the witness is not required to provide a written report."  Fed. R. Civ. P. 26(a)(2)(C); Fed. R. Civ. P. 26 Advisory Committee's Note.  "The (a)(2)(C) disclosure requirement does not include facts unrelated to the expert opinions the witness will present."  Fed. R. Civ. P. 26 Advisory Committee's Note.

Rule 26(a)(2)(C) and the summary disclosure were added as part of the 2010 amendments to "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement.  An (a)(2)(B) report is required only from an expert described in (a)(2)(B)."  Fed. R. Civ. P. 26 Advisory Committee's Note.  As has been discussed by cases interpreting the amendments, "[t]he amendments did not alter who was required to file an expert report under the rule and explained that an expert 'retained or specially employed' must submit a complete expert report. Rule 26(a)(2)(B)."  *Coleman v. Am. Family Mut. Ins. Co.*, 274 F.R.D. 641, 645 (N.D. Ind. 2011) (reemphasizing in a separate portion of the opinion that "the amendment to Rule 26 did not alter who is required to file an expert report"); *see also Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-1094, 2013 WL 1189493, at *12 (N.D. Ga. Mar. 21, 2013) ("While the amended rule may have created a new type of disclosure for experts who were not required to file a written report, it did not alter the criterion for identifying those experts who do have to submit a report: that is, experts who have been 'retained or specially employed'").  Rule 26(a)(2)(C) applies "if the witness is not required to provide a written report."

The key to the amendment is an understanding of the "tension" referenced in the Advisory Committee's Note.  The amendment sought to address a concern that courts were over-classifying experts as subject to the written report requirement, *i.e.*, that courts were erring on the side of requiring a written report because the alternative meant no disclosure.  *See Coleman*, 274 F.R.D. at 645 (describing the amendments' purpose to address concerns that courts were requiring written reports from "experts who were not retained for the purpose of giving expert testimony").  By adding the summary disclosure requirement for non-retained experts in Rule 26(a)(2)(C), courts were no longer faced with an all-or-nothing choice.  *See Fielden v. CSX*

*Transp., Inc.*, 482 F.3d 866, 871-72 (6th Cir. 2007) (finding ancillary support for its conclusion, under the pre-2010 amendment version, that a treating physician was not required to produce a written report by noting that plaintiff "provided sufficient information about the nature of [the treating physicians]'s testimony" such that there was "no surprise as to the scope of the testimony" and therefore the "Rule's underlying procedural fairness" was not violated).

With the addition of this new category of disclosure for expert witnesses, it was necessary to provide guidance to aid courts in properly identifying the difference. *See Coleman*, 274 F.R.D. at 645 (stressing that the amendment "attempts to *clarify* the distinction between an expert retained to testify and one who will testify for reasons independent of trial preparation" and "attempts to *clarify* the distinction between an expert retained for the purpose of providing expert testimony and non-retained experts" (emphases added)). Rule 26(a)(2)(C), which applies only "if the witness is not required to provide a written report," has no impact on the threshold issue of whether the witness is required to provide a written report under Rule 26(a)(2)(B), *i.e.*, whether the witness was "retained or specially employed to provide expert testimony in the case."

The Advisory Committee's Note provides a persuasive indication that Rule 26(a)(2)(C) is meant to apply only to so-called hybrid witnesses, *i.e.*, fact witnesses who can also provide expert testimony under Federal Rules of Evidence 702, 703, or 705. *See Coleman*, 274 F.R.D. at 645 ("[T]he amendment appears to speak directly to experts, such as treating physicians, whose testimony often blurs the line between fact and opinion"). The lone example provided in the Advisory Committee's Note references "physicians and other health care professionals," whom are frequently named as experts. *See, e.g.*, *Fielden*, 482 F.3d at 870-71 (citing and discussing several pre-2010 amendment cases that examined whether a treating physician was required to

submit a written report).  This example is particularly apt because of the dual role a physician can play: "Treating physicians are both fact witnesses and, by virtue of their education, training and experience, experts."  *Crabbs v. Wal-Mart Stores, Inc.*, No. 4:09-cv-519, 2011 WL 499141, at *2 (S.D. Iowa Feb. 4, 2011).  The Advisory Committee's Note goes on to provide that "[a] witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony."  Fed. R. Civ. P. 26 Advisory Committee's Note.  Finally, it states that "[t]he (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present."  That the Advisory Committee's Note to Rule 26(a)(2)(C) makes repeated references to the expert also testifying to facts from personal knowledge is strong persuasive evidence that the summary disclosure requirement was meant to apply only to hybrid witnesses.

**B.  "Retained or Specially Employed to Provide Expert Witness Testimony in the Case"**

The leading Sixth Circuit case on whether an expert is "retained or specially employed to provide expert testimony in the case," which was decided before the 2010 amendments, involved a treating physician.  *Fielden*, 482 F.3d 866.  The Court held that the treating physician was exempt from the written report requirement because "there is evidence that Dr. Fischer formed his opinions as to causation at the time that he treated [plaintiff] and there is no evidence that Dr. Fischer formed his opinion at the request of Fielden's counsel."  *Id.* at 869.  The Court further emphasized that "there is evidence that Dr. Fischer reached his conclusion about the cause of [plaintiff]'s injuries at the time of the treatment."  *Id.* at 871.

An Indiana District Court in *Coleman* examined the 2010 amendments and their impact on precedent based on the pre-2010 version in a dispute involving treating physicians.  The Court noted that the holding of a prior Seventh Circuit case involving treating physicians appeared to

be abrogated by the amendment.  *Coleman*, 274 F.R.D. at 645 (discussing *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729 (7th Cir. 2010)).  The Seventh Circuit in *Meyers* held that a treating physician was "retained or specially employed to provide expert testimony in the case" because he was "offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment."  *Meyers*, 619 F.3d at 734-35.  The District Court in *Coleman* held that the treating physicians were not subject to the written report requirement of Rule 26(a)(2)(B) because "[n]othing in the record suggests that the treating physicians were sought for any purpose except treatment."  *Id.*  To the *Coleman* Court, the determinative factor was purpose.  *Id.*  (stressing that "[i]t would be difficult to conclude that the treating physicians identified here were retained for the express purpose of giving expert testimony").  The *Coleman* Court reached a different result than *Meyers*, but an examination of its analysis indicates that the different result was due to factual distinctions rather than the 2010 amendment changing the operative standard.  *Id.* ("Because the amendment to Rule 26 attempts to clarify the distinction between an expert retained to testify and one who will testify for reasons independent of trial preparation, the court finds that the amendment overcomes the holding in *Meyers* as far as the physicians at hand are concerned because of the purpose for which they were first sought").

Although the majority of cases interpreting whether a witness is "retained or specially employed to provide expert testimony in the case" involve treating physicians, several cases involving witnesses of other professions provide instructive reasoning that Rule 26(a)(2)(C) is intended to apply only to hybrid witnesses.  The leading case attributed to the new Rule is *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1 (1st Cir. 2011).  Although decided after the 2010 amendments went into effect, the First Circuit applied the pre-amendment

version of Rule 26.  *Id.* at 7 n.4.  In *Downey,* the plaintiffs discovered an infestation of bed bugs and immediately called a pest control company.  Edward Gordinier, a licensed and experienced exterminator, responded to the service call the same day.  *Id.* at 3.  Gordinier composed an incident report describing the infestation and later carried out the necessary extermination treatments.  *Id.*  Gordinier was disclosed as an expert; he did not, however, produce a written report delineating his expected testimony.  *Id.* at 4.

After setting forth the issue but before it began its analysis, the First Circuit made the following observation:

> The circumstances *suggest* that he was not ["retained or specially employed"].  For one thing, there is no evidence that Gordinier was a person who held himself out for hire as a purveyor of expert testimony.  For another thing, there is no evidence that he was charging a fee for his testimony.

*Id.* (emphasis added).  According to Plaintiff's reading of the case, the Court proceeded in its analysis only because Gordinier was a fact witness and thus "was not retained in the ordinary [sense] of the word."  Doc. 21 at PageID 201; *see also id.* at PageID 202.  Because Thomas is not a fact witness, Plaintiff suggests, he is not "retained" in the ordinary sense of the word and, therefore, this Court need not conduct any further analysis.  *Id.*

A close reading of *Downey* reveals that there would be no need for further analysis if Gordinier was not a fact witness, but not for the reasons Plaintiff argues.  If Gordinier were not a fact witness, there would indeed be a simple answer as to whether he was "retained or specially employed to provide expert testimony in the case"; the answer would be yes.  The three brief sentences upon which Plaintiff relies -- relating to the witness neither holding himself out for hire as an expert nor charging a fee -- are dicta.  First, the Court introduces these two facts with the phrase "circumstances *suggest*" that the witness was not retained.  *Id.* at 6 (emphasis added). The Court also does not cite to precedent, a fact that Plaintiff is quick to identify in cases cited by

Defendants. *See* doc. 21 at PageID 203 (referring to *J.A. ex rel. Abelove v. Seminole Cnty. Sch. Bd.*, No. 6:05-cv-975, 2006 WL 2927560 (M.D. Fla. Oct. 12, 2006)). After noting two "circumstances" that "suggest" the witness was not retained, the Court proceeds to interpret what the phrase "retained or specially employed" means and apply this meaning to the nuances of facts presented, all replete with numerous citations to precedent. *Downey*, 633 F.3d at 6-8.

> The crux of the rule to be taken from *Downey* is set forth in the following paragraph:

> > In order to give the phrase "retained or specially employed" any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony. It is this difference, we think, that best informs the language of the rule.

*Id.* at 6. Gordinier was held not to be "retained or specially employed" because "his opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation. Thus, he falls outside the compass of Rule 26(a)(2)(B)." *Id.* (citing *Fielden*, 619 F.3d at 869).

Further support for the conclusion that Rule 26(a)(2)(C) only applies to hybrid witnesses can be drawn from the First Circuit's holding that "as long as an expert was not retained or specially employed in connection with the litigation, and his opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B)." *Id.* at 7. A finding that an expert witness falls within the scope of Rule 26(a)(2)(C) is a result of "the unique role that an expert who is actually involved in the events giving rise to the litigation plays in the development of the factual underpinnings of a case." *Id.* at 7 & n.3 (emphasizing that the distinction between the two categories is "a distinction that is based on the role the witness has played in the case"). As a counterexample, the First Circuit stated that if "the expert comes to the case as a stranger and draws the opinion

from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B)." *Id.* at 7.

In *Ulbrick v. UPR Prods.*, No. 08-cv-13764, 2011 WL 500034 (E.D. Mich. Feb. 8, 2011) the expert witness, Mr. McSwain, was a racing mechanic who examined a vehicle involved in a deadly accident. *Id.* at *1. McSwain, a friend of the decedent's father, was asked to dispose of the vehicle after the accident. *Id.* Before disassembling the wrecked vehicle, McSwain examined it to determine the cause of the accident and took numerous photographs. *Id.* In analyzing whether McSwain was "retained or specially employed to provide expert testimony in the case," the Court stated the rule that such a classification is "determined primarily by the scope, substance, and source of the intended testimony—*not on whether the witness is being compensated*." *Id.* at *4 (emphasis added) (citing *Fielden*, 482 F.3d at 671). After discussing the principles derived from treating physician cases, the Court held that McSwain was required to produce a written report, reasoning as follows:

> By analogy, McSwain would seemingly be required to file an expert report, inasmuch as his opinions were formed not, for example, in an attempt to repair the vehicle, but rather in an effort to determine the cause of the accident. Thus, he was functioning analogously to a physician performing an "after-the-fact" diagnosis rather than providing "in-the-moment" or "on-the-scene" treatment. Moreover, his opinions were not formed as a result of witnessing or experiencing the accident which is the subject matter of this lawsuit. Rather, they were presumably formed as a result of a process that any expert witness would undertake; namely, an "after-the-fact" examination of the vehicle in question.

*Id.* (citations omitted). McSwain was held to be "retained or specially employed to provide expert testimony in the case" because his testimony was based solely on "after-the-fact" information. *Id.* The Court found his lack of "in-the-moment" or "on-the-scene" involvement to be dispositive. *Id.*

In *Saline River Props., LLC v. Johnson Controls, Inc.*, No. 10-cv-10507, 2011 WL 6031943 (E.D. Mich. Dec. 5, 2011), the expert witnesses at issue were employees of a non-party environmental testing company who were hired by plaintiff, before litigation was contemplated, to determine if a property was polluted. *Id.* at *5. The Court held that these experts were not subject to the written report requirement because they were "conducting environmental testing on [defendant]'s property not in anticipation of litigation or in a remedial effort." *Id.* at *9. Instead, the experts were to "testify about their past investigation and testing that they performed and caused to be performed" and would provide "opinions regarding the interpretation of the testing results obtained from the investigations performed and whether the tests revealed the existence of hazardous waste." *Id.* That these witnesses were to primarily testify as fact witnesses based on personally-observed facts and their own involvement in events that formed the basis of the litigation, and just so happened to also be able to provide expert testimony regarding the interpretation of the testing results, was the deciding factor. *Id.* at *8-9.

Applying the same principles to a different scenario, the Court in *Beane v. Utility Trailer Mfg. Co.*, No. 2:10-cv-781, 2013 WL 1344763 (W.D. La. Feb. 25, 2013), held that a group of expert witnesses were subject to the written report requirement because their role in a case -- stemming from a deadly accident involving a tractor-trailer -- was limited to knowledge of the trailer manufacturing industry. *Id.* at *3. Differentiating the facts from those in *Downey*, the Court observed that the experts had no personal knowledge of the events underlying the accident and were brought in solely because of their knowledge of the industry. *Id.* The Court stressed that unlike the expert witness in *Downey*, there was nothing to differentiate the particular expert witnesses whom plaintiff sought to have testify from any other person with expertise in the same field:

> There is no evidence that these experts have any firsthand knowledge on [defendant]'s trailer design or [plaintiff]'s specific side underride accident, and thus any comparisons the experts might make between their companies' trailer and [defendant]'s trailer must arise by examining the relevant information from this case, indicating that they were specifically recruited after-the-fact just to provide expert testimony.

*Id.* This case illustrates the counterexample proffered in *Downey*; namely, that the expert witnesses "are clearly not 'percipient witness[es] who happen[] to be experts,' but rather are 'expert[s] without prior knowledge of the facts giving rise to the litigation [who are] recruited to provide expert testimony.'" *Id.* (quoting *Downey*, 633 F.3d at 6).

> The Eleventh Circuit has provided further reasoning to help guide the instant analysis:

> Rodriguez had no connection to the specific events underlying this case apart from his preparation for this trial. He merely reviewed police reports and depositions provided by counsel and offered expert opinions on the level of force exhibited by Prieto and the appropriateness of the officers' response. He categorized these events by referring to the "use of force matrix," a visual chart used to train officers on the level of force appropriate to a particular act of resistance. He testified that Prieto's use of a belt would be "considered aggravated physical, which is the highest level of resistance an individual can give." R. at 148–53. He then concluded that the officers could "go to a deadly force response, according to this matrix." *Id.* In other words, he functioned exactly as an expert witness normally does, providing a technical evaluation of evidence he had reviewed in preparation for trial. Because he had no direct, personal knowledge of any of these facts, his role was simply not analogous to that of a treating physician, the example offered by the Advisory Committee of an employee exempt from the written report requirement.

*Prieto v. Malgor*, 361 F.3d 1313, 1318-19 (11th Cir. 2004). The Court expressly found that the expert was not a hybrid witness. *Id.* at 1318 n.7.

## C. Compensation

Plaintiff's argument -- that Thomas falls within the scope of Rule 26(a)(2)(C), and thus need not produce an expert report -- is premised upon the fact that Thomas will receive no compensation here. Plaintiff suggests this lack of compensation, in and of itself, is determinative of the issue of whether Thomas is "retained or specially employed to provide expert testimony in

the case." Doc. 21 at PageID 200. Plaintiff fails to cite any cases that directly support this argument. Instead, Plaintiff argues that this conclusion can be derived from the reasoning employed in cases such as *Downey* that addressed the issue of hybrid witnesses. *Id.* at PageID 201-02.

Defendants argue that the issue of compensation is irrelevant to the instant analysis and discuss cases that have addressed the issue. Doc. 20 at PageID 186-92. A District Court in Texas, for example, expressly stated that "[i]t is irrelevant for purposes of Rule 26 whether an expert has been compensated for his or her testimony or simply volunteers that testimony. Nothing in the Federal Rules prohibits an expert from formulating opinions simply because the expert elected to do so on a voluntary basis." *Spears v. United States*, No. 5:13-cv-47, 2014 WL 258766, at *8 (W.D. Tex. Jan. 23, 2014).

The Court in *Abelove* also discussed the effect of compensation upon the written report requirement. 2006 WL 2927560, at *1-2 & n.1. In a lawsuit involving alleged abuse of an autistic student, a defendant named two certified elementary school teachers of autistic children as witnesses and disclosed a brief synopsis of their expected testimony, but did not provide written reports. *Id.* at *1-2. The Court granted a motion to strike the expert witnesses and stated "[u]nless these witnesses are fact witnesses (which, in that case, do not require a report), it is difficult for the Court to understand the value their testimony unless they are qualified as experts, and then reports should have been provided." *Id.* at *2. In a footnote, the Court also observed that "[e]ven if the witnesses are 'volunteers' rather than paid experts, they have been retained by [defendant] to provide expert testimony, and she [was] obliged to comply with Rule 26." *Id.* at *2 n.1.

- 13 -

As previously discussed, a District Court in the Sixth Circuit has held that whether a witness "falls within this requirement is determined primarily by the scope, substance, and source of the intended testimony—not on whether the witness is being compensated." *Ulbrick*, 2011 WL 500034, at *4. The Court in *Beane* also discussed an issue regarding the manner in which the expert witness becomes involved in the litigation that is instructive to the instant situation. The expert witnesses at issue in that case were subpoenaed by plaintiff, who then argued that the experts were exempted from the written report requirement on that basis. *Beane*, 2013 WL 1344763, at *1. The Court rejected this argument out of hand on policy grounds, stating:

> The plaintiff's argument that expert reports are not required because she has not actually hired or retained these experts therefore misreads the intent of the 2010 addition of subsection (a)(2)(C). Allowing the plaintiff to subpoena these experts, who necessarily must study the facts and issues in this litigation in order to testify with any context, would grant the plaintiff the double benefit of retaining expert witnesses without having to pay them for their preparation, and without having to expend the extra effort in presenting expert reports or proving their expertise on the issue of trailer design.

*Id.* at *4; *see also Smith v. State Farm Fire & Cas. Co.*, 164 F.R.D. 49, 56 (S.D.W.V. 1995) ("The terms 'retained' and 'specially employed' encompass a wide range of compensation agreements not limited to payment of an expert fee at an hourly rate").

### III.

It is undisputed that Thomas's testimony will not "blur[] the line between fact and opinion." *Coleman*, 274 F.R.D. at 645. Moreover, his testimony is not based on his "ground-level involvement in the events giving rise to the litigation." *Downey*, 633 F.3d at 6. Instead, Thomas is an expert witness who "comes to the case as a stranger and draws the opinion from facts supplied by others, in preparation for trial." *See id.* at 7.

- 14 -

The Advisory Committee's Note and cases discussed above consistently interpret Rule 26(a)(2)(C) as applying only to "a percipient witness who happens to be an expert." *Id.* at 6. Plaintiff admits that Thomas is not a hybrid witness. Doc. 21 at PageID 201-02. Yet, Plaintiff nonetheless argues that Thomas falls within the scope of Rule 26(a)(2)(C). The Court disagrees. Other than his lack of compensation, Thomas is indistinguishable from any other expert witness subject to Rule 26(a)(2)(B). Thomas is an "expert who[,] without prior knowledge of the facts giving rise to litigation[,] is recruited to provide expert opinion testimony." *Downey*, 633 F.3d at 6.

Rule 26(a)(2)(C) was added to address the reasonable concern that Courts were overly finding non-retained experts were retained experts because to hold otherwise meant no disclosure. *See Coleman*, 274 F.R.D. at 645. The new summary disclosure provisions for non-retained experts in Rule 26(a)(2)(C) were meant to address this all-or-nothing alternative that led Courts to err on the side of designating a witness as a retained expert. *See id.* Contrary to Plaintiff's urgings, only a so-called hybrid or percipient witness can qualify under Rule 26(a)(2)(C) as a non-retained expert. Plaintiff's interpretation of Rule 26(a)(2)(C) -- to include witnesses without any factual knowledge -- would make three portions of the Advisory Committee's Note superfluous. First, "[a] witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony." Second, a pure expert witness such as Thomas would be completely unaffected by the statement that "[t]he (a)(2)(C) disclosure requirement does not include facts unrelated to the expert opinions the witness will present." Fed. R. Civ. P. 26 Advisory Committee's Note. Finally, the example given in the Advisory Committee's Note -- of "physicians and other health care professionals" -- reveals that expert witnesses like Thomas are subject to Rule 26(a)(2)(B). *See Compass Bank v.*

*Eager Rd. Assocs., LLC*, No. 4:12-cv-1059, 2013 WL 5786634, at *4 (E.D. Mo. Oct. 28, 2013) ("A retained or specialty expert is 'an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony.' A non-retained expert is one whose testimony arises from his or her involvement in events giving rise to the litigation" (quoting *Downey*, 633 F.3d at 6)).

Plaintiff's attempt to shift the focus to that of compensation is unavailing. This Court agrees with the reasoning espoused by several other courts -- that whether the expert witness receives compensation is irrelevant to the issue of whether he or she is "retained or specially employed to provide expert testimony in the case." *See Spears*, 2014 WL 258766, at *8 ("It is irrelevant for purposes of Rule 26 whether an expert has been compensated for his or her testimony or simply volunteers that testimony. Nothing in the Federal Rules prohibits an expert from formulating opinions simply because the expert elected to do so on a voluntary basis"); *Ulbrick*, 2011 WL 500034, at *4 ("If a witness falls within this requirement [of Rule 26(a)(2)(B)] is determined primarily by the scope, substance, and source of the intended testimony—not on whether the witness is being compensated"); *Abelove*, 2006 WL 2927560, at *2 n.1 ("Even if the witnesses are 'volunteers' rather than paid experts, they have been retained by [defendant] to provide expert testimony, and she [was] obliged to comply with Rule 26").

The question here is whether Thomas is "retained or specially employed to provide expert witness testimony in the case." Doc. 20 at PageID 184; doc. 21 at PageID 200. Plaintiff argues this is not so because Thomas sought out Plaintiff's counsel and agreed to serve as an expert witness without compensation. The Court disagrees with Plaintiff's proposed blanket rule that an expert witness who would otherwise qualify as one "retained or specially employed to provide expert testimony in the case" is a non-retained expert because he or she does not receive

monetary compensation. Such a rule is rife for abuse. Other than his lack of compensation, Thomas is indistinguishable from any other expert witness subject to Rule 26(a)(2)(B). Thomas is an "expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony." *Downey*, 633 F.3d at 6. This Court agrees with the statement that "the distinction between a 26(a)(2)(B) expert and a 26(a)(2)(C) expert is that 26(a)(2)(C) experts' conclusions and opinions arise from firsthand knowledge of activities they were personally involved in before the commencement of the lawsuit, and not conclusions they formed because they were recruited to testify as an expert after-the-fact." *Beane*, 2013 WL 1344763, at *3. The "scope, substance, and source of the intended testimony" comes exclusively from Thomas's review of documents made available to him by Plaintiff's attorney. *See Ulbrick*, 2011 WL 500034, at *4.

**IV.**

In light of the above discussion, Defendants' oral motion -- to require Thomas to produce a written expert report -- is **GRANTED**. Accordingly, pursuant to Fed. R. Civ. P. 26(a)(2)(B), Plaintiff shall provide to Defendants a written report -- prepared and signed by Thomas -- within **TWENTY-ONE (21) DAYS** of the issuance of this Order, *i.e.*, on or before June 9, 2014. Defendants shall have **FORTY-FIVE (45) DAYS** after service of the written report in which to designate their rebuttal expert(s) and produce any and all responsive expert reports required under the Federal Rules of Civil Procedure. The Calendar Order is **SO AMENDED**.

    **IT IS SO ORDERED**.

May 19, 2014                                s/ **Michael J. Newman**
                                                  United States Magistrate Judge